UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOAN M ANKROM, | Case No. 1:16-cv-00016-CWD |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,[1] | |
| Respondent. | |

## INTRODUCTION

Currently pending before the Court is Joan Ankrom's Petition for Review of the

Respondent's denial of social security benefits, filed on January 11, 2016. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will affirm the decision of

the Commissioner.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

MEMORANDUM DECISION AND ORDER - 1

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on November 1, 2010. This application was denied initially and on reconsideration, and a hearing was held on May 1, 2012, before Administrative Law Judge (ALJ) John Molleur. After hearing testimony from Petitioner and a vocational expert, ALJ Molleur issued a decision on June 5, 2012, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council. Because a portion of the hearing transcript was missing, the Appeals Council remanded the matter to the ALJ to conduct another hearing. The second hearing was held on April 3, 2014, at which Petitioner, her husband, and a vocational expert testified. On April 11, 2014, ALJ Molleur issued a decision finding Petitioner not disabled.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing on April 3, 2014, Petitioner was fifty-two years of age. Petitioner has a high school education. Her prior work experience includes part-time work in retail, at St. Vincent's thrift store in the book department.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset

**MEMORANDUM DECISION AND ORDER - 2**

date of July 24, 2006, up through the date last insured of September 30, 2008.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's bipolar disorder and degenerative disc disease severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.04A (spinal disorders) and 12.04 (mental disorders).

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her symptoms are credible.

Here, the ALJ found Petitioner's complaints about the intensity and persistence of her symptoms not entirely credible. The ALJ found also that the medical source statements of Petitioner's treating physicians and other care providers, who included Ms. Kelli Bermensolo, LCSW; Ms. Heidi Ritchie Lossman, Nurse Practitioner; Ms. Jeanne Melton, LCSW; Dr. Michelle Boyer; Dr. Scott Hoopes; Ms. Mildred Tikker, LCSW; and Ms. Nicole Massari, counselor, little to no weight. The ALJ found the majority of the opinions post-dated the date last insured of September 30, 2008, and were therefore not

**MEMORANDUM DECISION AND ORDER - 3**

relevant to Petitioner's condition prior to that date. With regard to Ms. Bermensolo and Ms. Lossman, who treated Petitioner during the relevant time period, the ALJ found the counseling notes did not support their opinions.

The ALJ determined Petitioner had the residual functional capacity (RFC) to perform light work, with the exception that she could not climb ladders, ropes or scaffolds; occasionally reach overhead; not have exposure to unprotected heights and avoid exposure to moving machinery; and she should be limited to brief and superficial contact with the public, frequent contact with supervisors, so long as there was no close coordination with co-workers in a team setting. The ALJ further limited Petitioner to work in a low stress environment, with only occasional decision making or changes in work settings. (AR 21.)

The ALJ found Petitioner did not have past relevant work, and therefore proceeded to step five. The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as mail clerk; housekeeper/cleaner; and marker. Consequently, the ALJ determined Petitioner was not disabled.

**MEMORANDUM DECISION AND ORDER - 4**

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

MEMORANDUM DECISION AND ORDER - 5

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**MEMORANDUM DECISION AND ORDER - 6**

## DISCUSSION

**1.     Other Source Opinions**

Petitioner was diagnosed with bipolar disorder in 2001. Between Petitioner's onset

date of July 24, 2006, and the date last insured of September 30, 2008, social worker

Kelli Bermensolo and psychiatric nurse practitioner Heidi Ritchie Lossmann provided

care to Petitioner. Thereafter, social worker Jeanne Melton provide care, beginning in

June of 2010. Petitioner contends the ALJ erroneously concluded none of their opinions

were supported by or consistent with their chart notes, and were improperly rejected on

the grounds that they are not acceptable medical sources.

### A.      Heidi Lossmann, N.P.

Petitioner argues Heidi Lossmann should be recognized as an acceptable medical

source, because many of the chart notes in the record were co-signed by Dr. Lundt, a

psychiatrist in the same office. In support, Petitioner cites *Gomez v. Chatter*, 74 F.3d 967

(9th Cir. 1996), and *Taylor v. Comm'r. of Soc. Security,* 659 F.3d 1228 (9th Cir. 1011),

which held that, pursuant to 20 C.F.R. § 416.913(a)(6), a nurse practitioner working in

conjunction with a physician constitutes an acceptable medical source, while a nurse

practitioner working on his or her own does not. *Gomez*, 74 F.3d at 971; *Taylor*, 659 F.3d

at 1234 (citing *Gomez*).

Petitioner's reliance upon *Gomez* is misplaced. The Ninth Circuit Court of

Appeals in *Boyd v. Colvin*, 524 Fed. Appx. 334 (9th Cir. 2013), recognized *Gomez* was

superseded by regulation, citing *Hudson v. Astrue*, CV 11–0025–CI, 2012 WL 5328786,

**MEMORANDUM DECISION AND ORDER - 7**

at *4 n. 4 (E.D. Wash. Oct. 29, 2012). Accordingly, Lossmann, as a nurse practitioner,

qualifies as an "other source." 20 C.F.R. § 404.1513(d)(1). Other sources are qualified to

provide evidence about "the severity of [a claimant's] impairment(s) and how it affects

[the claimant's] ability to work." *Garrison v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir.

2014).

The ALJ gave Lossmann's opinions, dated February 28, 2011, and April 26,

2011, little weight as they were contradicted by her own chart notes. (AR 23.) Lossmann

indicated that, during the period she treated Petitioner, Petitioner suffered auditory

hallucinations, tried several medications without much success, and that due to the

severity of her disorder, she was unable to keep a job or attend school. (AR 558-559.) A

review of Lossmann's treatment notes from January 5, 2006 – November 25, 2008, (AR

500 – 539), however, supports the ALJ's conclusion that, throughout visits in 2006,

Petitioner's mood was stable and often noted as improving, she had better energy, good

insight and judgment, and was struggling with normal life stressors such as attending

college and dealing with her daughter's wedding. (AR 531 – 539.) One period of

breakthrough hypomania was noted in October and December of 2006, but Lossmann

noted Petitioner's overall mood and anxiety were "stable overall." (AR 531 – 532.)

In January of 2007, Lossmann again noted Petitioner's mood was "mostly stable",

and that Petitioner was struggling with "balance." (AR 530.) In March, Lossmann noted

Petitioner's mood was better, and Petitioner was struggling with "situational stress." (AR

529.) In June of 2007, Petitioner had taken a trip to Montana, and was noted to have a

**MEMORANDUM DECISION AND ORDER - 8**

mildly elevated mood. (AR 526 - 527.) By July of 2007, Petitioner's mood was improving and had stabilized, although Petitioner was complaining of hypersensitivity to sound and complained of hearing music in her head. (AR 520 - 524.) By August of 2007, however, the music had disappeared, and Petitioner was noted again as improving and stabilizing throughout the remainder of 2007. (AR 513 - 521.)

Beginning in January of 2008, Lossmann again noted Petitioner's mood was mostly stable and better, despite Petitioner's complaints of some mania and hallucinations. (AR 512.) Petitioner's stressors included her daughter's upcoming wedding in August. (AR 511.) In March of 2008, Petitioner was again noted as "better," and denied mania, hallucinations, and noises. (AR 510.) It is not until May of 2008 that Petitioner complained of hearing "organ music," but Lossmann noted Petitioner's affect was congruous and her insight and judgment were good. (AR 507 - 508.) Similar notes appear in Lossmann's chart for July, August, and September of 2008. (AR 503 – 505.)

For the same reason as he rejected Lossmann's written opinion, the ALJ rejected Lossmann's proposed mental residual functional capacity assessment, which indicated marked to extreme limitations in social functioning, adaptability, concentration, and the ability to understand work tasks. (AR 24, 614 – 616.) The ALJ found the mental RFC assessment contradicted the treatment notes, which did not document any marked or extreme limitations in any area prior to the date last insured. (AR 24.)

The Court finds the ALJ gave a germane reason for rejecting Lossmann's opinion that Petitioner was unable to work, and that substantial evidence supports the ALJ's

**MEMORANDUM DECISION AND ORDER - 9**

conclusion that Lossmann's chart notes conflicted with her later assessment in 2011. Lossmann's chart notes consistently indicate stable mood and minor life stressors contributing to Petitioner's mental health status. No episodes of decompensation appear, and the brief episodes of breakthrough mania do not appear to have been serious, as Lossmann consistently indicated Petitioner had good insight and judgment throughout the relevant time period.

The Court finds the ALJ did not commit error.

**B.     Kelli Bermensolo**

Bermensolo treated Petitioner from September of 2005 through February of 2012. Bermensolo's April 22, 2011, assessment (AR 546, 589) indicates Petitioner was unable to maintain consistent attendance at school because of mood swings and loss of control, and that she was unable to hold down a job due to auditory hallucinations. In Bermensolo's opinion, Petitioner was unable to work. (AR 546, 589.) The ALJ rejected Bermensolo's opinion on the grounds that her treatment notes did not support it. (AR 23.)

The ALJ gave germane reasons for discounting Bermensolo's opinions, substantiated by evidence in the record. The ALJ concluded Bermensolo's treatment notes reflected common life stressors, lengthy treatment gaps, but no indication that Petitioner's symptoms during the relevant time period were disabling. (AR 22.) A review of Bermensolo's chart notes from the onset date through the date last insured supports the ALJ's assessment. (AR 365 – 352.)

**MEMORANDUM DECISION AND ORDER - 10**

After the alleged onset date, in October of 2006, Petitioner reported needing assistance communicating with her husband. (AR 352.) No further counseling occurred with Bermensolo until April of 2007, which the ALJ noted was a large treatment gap for someone claiming disabling symptoms at that time. (AR 22.) Later chart notes reflect Petitioner was having difficulty with her mother-in-law (AR 363) and marital problems (AR 360 - 361); but that she was starting to do projects and paint (AR 359). By September of 2007, Bermensolo noted Petitioner had improvement in her mood, and that Petitioner reported she was more stable. (AR 357.)

There is another long treatment gap, as it is not until July 11, 2008, that Petitioner sees Bermensolo again. (AR 353.) The ALJ notes Petitioner reported having stress resulting from her daughter's wedding. (AR 353.) Upon returning in August of 2008, Petitioner reported she handled conflict with regard to her daughter's wedding "appropriately." (AR 352.) Petitioner received no further counseling from Bermensolo until October of 2009. The ALJ concluded that these treatment notes reflected common life stressors, lengthy treatment gaps, and no indication that Petitioner's symptoms during the relevant period were disabling. (AR 22.)

The Court finds the ALJ did not err in discounting Bermensolo's opinion, as it conflicted with her chart notes and there were treatment gaps during the relevant time period under review.

**MEMORANDUM DECISION AND ORDER - 11**

### C.      Jeanne Melton

Petitioner fails to explain in her opening brief why she contends the ALJ improperly rejected the opinion of social worker Jeanne Melton. The Court declines to consider this issue because Petitioner did not argue the issue with any specificity in her briefing. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that we "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").

### 2.      Dr. Michelle Boyer

Petitioner argues the ALJ improperly rejected the opinions of psychiatrist Michelle Boyer, who completed a mental residual functional capacity questionnaire in August of 2013. Dr. Boyer noted several marked limitations in the areas of social functioning, concentration, and ability to understand and remember detailed instructions. (AR 929 – 931.) Although Dr. Boyer did not begin treating Petitioner until May of 2013, she indicated her opinions reflected Petitioner's RFC since 2006, and were based upon historical medical records. (AR 932.)

The ALJ rejected Dr. Boyer's opinion on the grounds that she had just begun treating Petitioner in May of 2013, and therefore had limited treatment history prior to completing the mental RFC assessment in August of 2013. (AR 24.) The ALJ gave the opinion no weight, because it had no bearing on any treatment or observation of Petitioner during the period between 2006 to 2008, and the ALJ assumed that, rather than

**MEMORANDUM DECISION AND ORDER - 12**

a review of the historical medical records, Dr. Boyer based her opinion on Petitioner's subjective reports, which the ALJ found were not supported prior to the expiration of the date last insured. (AR 24.)

"Medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Here, however, the ALJ reviewed the only medical records from the relevant time period (Lossmann and Bermensolo), finding them not reflective of extreme limitations in any functional area. (AR 22-24.) The ALJ rejected also Lossmann's mental RFC evaluation, which was similar to Dr. Boyer's RFC assessment, because he found it to be inconsistent with the treatment notes from the relevant time period. (AR 24.) Similarly, Dr. Boyer's RFC assessment concluded Petitioner had marked limitations in several functional areas, but Lossmann's and Bermensolo's treatment notes for the relevant period did not reflect such extreme limitations. Moreover, Dr. Boyer did not specify which records she reviewed, or whether the records she did review were from the period at issue.

Accordingly, the Court finds the ALJ's conclusion is supported by substantial evidence in the record.

### 3.      Petitioner's Husband, Kevin Ankrom

Petitioner's husband completed a disability report on November 26, 2010. (AR 298 – 305.) In his report, Ankrom indicated his wife suffers from severe anxiety and panic attacks, and cannot pay attention during periods of depression or mania. The ALJ

gave little weight to Ankrom's statements because they were inconsistent with the treatment Petitioner received during the time period at issue. (AR 23.)

The ALJ gave a germane reason relevant to the witness for rejecting the opinions offered by Ankrom about his wife. *Molina*, 674 F.3d at 1114. Because the ALJ gave germane reasons for rejecting the opinions of Lossman and Bermensolo on the same grounds, the ALJ may point to those same reasons for rejecting similar testimony by Ankrom. *Id.* The ALJ did not commit error.

**4.     Petitioner's Credibility**

Last, Petitioner argues the ALJ did not properly support his credibility findings regarding Petitioner's allegations of disabling symptoms. To find Petitioner's testimony regarding the severity of her psychological symptoms unreliable, the ALJ was required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. *Id.* (quoting *Smolen*, 80 F.3d at 1281–82). If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*

**MEMORANDUM DECISION AND ORDER - 14**

The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id*. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Id.* (quoting *Thomas*, 278 F.3d at 959).

Petitioner alleged an inability to perform work activity due to her low energy, depression, inability to concentrate, and manic episodes which caused anxiety. Petitioner alleged also that her moods were variable, such that sustained work on a regular basis was precluded. (AR 22.) The ALJ found Petitioner's statements not entirely credible because they were not supported by the objective medical evidence. (AR 22.) The ALJ discussed the objective medical evidence, which consisted mainly of Lossmann's and Bermensolo's treatment notes. (AR 22.) The treatment notes, while reflecting a few periods of manic symptoms, reflected improved and stable mood overall throughout the relevant time period. Treatment notes reflected also that there were numerous situational stressors, such as Petitioner's daughter's wedding, which were related to her brief periods of difficulty. Lossmann and Bermensolo often noted Petitioner's moods were, however, "mostly stable."

It was proper for the ALJ to reject Petitioner's subjective complaints when Petitioner's claims were inconsistent with the medical evidence of record. The ALJ's

**MEMORANDUM DECISION AND ORDER - 15**

reason for discounting Petitioner's testimony is supported by substantial evidence in the record, as discussed above. Accordingly, the Court will not disturb the ALJ's adverse credibility finding.

## CONCLUSION

The ALJ did not err in weighing the evidence as he did or in finding that Petitioner's testimony regarding the severity of her impairment was not entirely credible. Although the Court recognizes later medical records indicate Petitioner's condition worsened after September of 2008, and she experienced several psychiatric hospitalizations thereafter, the ALJ was constrained to the limited time period between Petitioner's onset date of July 24, 2006, through the date last insured of September 30, 2008. Substantial evidence supports the ALJ's decision with regard to the time period at issue, and the Court will, therefore, affirm the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 16**

## <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding Petitioner is not

disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

petition for review is **DISMISSED**.

DATED: March 16, 2017

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**